UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06-CV-656-H

STEPHEN C. YOUNG                                                                    PLAINTIFF

V.

WAL-MART, et. al.                                                                  DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

The Court now considers Defendant, Wal-Mart Stores East, L.P.'s ("Wal-Mart") motion for summary judgment. Plaintiff Stephen C. Young claims that Wal-Mart is directly and vicariously liable for the injuries he suffered as a result of a shooting and arrest by the Kentucky State Police. Also before the Court is Young's Rule 56(f) Affidavit, which permits a district court to continue its decision pending further discovery. The Court has thoroughly reviewed the pleadings. Kentucky courts could not sanction a claim against Wal-Mart under these circumstances. Therefore, for the reasons described below, the Court sustains Wal-Mart's motion.

I.

The actual evidence stated most favorably to Young follows. Around 7:00 p.m. on December 4, 2005, Wal-Mart employee Brian Fretschel ("Fretschel") telephoned the City of Radcliff Police Department to report a suspected shoplifting. In describing the suspects' vehicle,

Fretschel stated, in part:

> . . .
> Fretschel: I got, I got a license plate.
> Radcliff Police Department: You can go ahead and give me the plate.
> Fretschel: The plate is 17859. Looked like Kentucky, like one with the bird on it.[1]
> Radcliff Police Department: Okay. That might be, uh, environmental plates.
> Fretschel: It's a blue Explorer, a Ford Explorer. He's got like a UK jacket and they took some ...
> . . .

(Def.'s Ex. 3).

The Radcliff Police dispatch report stated, in relevant part, "17859 POSSIBLY AN ENVIRONMENTAL PLATE BLU FORD EXPLORER MALE AND FEMALE W/ BABY." (Def.'s Ex. 2). Approximately a half hour later, Officer Tucker Raifsnider ("Raifsnider") arrived at Wal-Mart to follow-up on Fretschel's report. In his supplementary report dated December 5, 2005, Raifsnider stated that Fretschel had reported ". . . a KY license plate of 17859 and said it was a nature plate possibly with a bird on it."

According to Young, the Radcliff Police Department dispatcher queried the Kentucky vehicle license database for all specialty plates with a bird depiction and the reported number. (Compl. ¶ 10). Young's license plate matched this description, although his vehicle description did not match the blue Ford Explorer description that Fretschel had provided to the dispatcher. Later that evening, officers from the Radcliff Police Department accompanied by Kentucky State Police troopers and members of the Hardin County Sheriff's Department proceeded to Young's residence. A KSP trooper opened fire and shot Young in the arm, after observing that Young

---

[1] In Kentucky, it is possible to pay a premium for a specialty license plate, which has a special background image. As the facts of this case reveal, Kentucky sometimes issues the same license plate number to multiple vehicles with differing background images.

2

was armed with a firearm.[2] The officers then placed Young under arrest and took him to the hospital where he was treated for his injury.

Young sued the Commonwealth of Kentucky, the City of Radcliff, the individual officers involved, as well as unknown employees of the Kentucky State Police. He is claiming violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as under Kentucky's Constitution and statutes. In addition, Young brings two counts against Wal-Mart. The first is a count of negligence, Young says that Wal-Mart breached its duty to exercise ordinary care in pursuing its "loss control policy," a duty he says includes reasonably training and supervising its loss control employees in reporting vehicle license plates. The second count claims that Wal-Mart is vicariously liable for the acts of the police misconduct Young alleges on the part of the law enforcement agencies involved. Specifically, Young argues that Wal-Mart was aware of the foreseeable risk of misidentification, use of excessive force, assault, and false arrest and therefore breached its duty to Young to prevent these harms. Young seeks compensatory and punitive damages for the pain, embarrassment, humiliation, emotional distress, damage to his reputation, and impairment of his ability to earn money in the future.

II.

Wal-Mart has moved for summary judgment under Fed. R. Civ. P. 56. The Court will grant a motion for summary judgment if the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[2]The Court notes that Young and the law enforcement co-defendants may well disagree on the events leading up to Young's shooting and subsequent arrest. The precise details of what occurred, however, are irrelevant to an analysis of whether Young's injuries were foreseeable to Wal-Mart. For this reason, the Court has described the encounter in general terms.

law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)(citing Fed.R.Civ.P. 56(c)). In applying Rule 56(c), a court views the evidence in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court properly enters summary judgment where there is not sufficient evidence in support of the non-movant's case upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

III.

The Court turns first to Young's claim that his injuries were a foreseeable consequence of Wal-Mart's negligent enforcement of its loss control policy. This Court must determine whether Kentucky courts would hold Wal-Mart legally responsible for injuries that various law enforcement officers and agencies inflicted on Young in the course of investigating the shoplifting that Fretschel reported.[3] In order to succeed on a claim of negligence, Young must prove: (1) duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury.[4]

---

[3]This Court very recently had occasion to review principles of due care and foreseeability in Kentucky tort law in deciding whether a prison could be held liable for the criminal acts of an escaped prisoner. *See Norris v. Corr. Corp. of America*, 3-07CV-273-H.

[4]In opposition to the summary judgment motion, Plaintiff cites a Kentucky Court of Appeals case for the proposition that Kentucky has adopted the Restatement (Second) of Torts § 281 with respect to causation analysis. *Edward F. Heimbrock Co., Inc. v. Marine Sales and Serv., Inc.*, 766 S.W.2d 70 (Ky. App. 1989). Under §281,

The actor is liable for an invasion of an interest of another, if:
(a) the interest invaded is protected against unintentional invasion, and
(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and
(c) the actor's conduct is a legal cause of the invasion, and
(d) the other has not so conducted himself as to disable himself from bringing an action for such invasion.

The Court is persuaded by the more recent analysis of *Lewis v. B&R Corp.*, 56 S.W.3d 432 (Ky. App. 2001) which concludes, "that Kentucky courts have not fully embraced the Restatement (Second) approach to causation analysis." *Id.* citing *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328 (Ky. 1987). The difference between the Restatement approach and the traditional analysis is that the Restatement "places the foreseeability component under the analysis of determining duty as a party of negligence, rather than under the concept of 'legal [proximate] cause.'" *Id.*

4

*James v. Meow Media, Inc.,* 300 F.3d 683, 689 (6th Cir. 2002); *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). Kentucky courts have adopted a universal duty of care under which "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987). However, legally actionable claims are limited to those in which the harm suffered is the foreseeable consequence of the defendant's negligence. S*ee, e.g. James*, 300 F.3d 683, 690 (6th Cir. 2002).

Under Kentucky law, "[a]s a general rule, an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005). On some occasions, however, Kentucky courts have found a duty of care for the intentional acts of third parties where the defendant had a "special relationship" with the plaintiff (the victim). *See, e.g. Britton v. Wooten*, 817 S.W.2d 443 (Ky. 1991)(where a landlord owed a duty to a tenant to avoid the opportunity for arson); *Waldon v. Hous. Auth. of Paducah,* 854 S.W.2d 779 (Ky. 1991)(where a landlord owed a duty to protect tenants from intruders); *Evans v. Morehead Clinic*, 749 S.W.2d 696 (Ky. Ct. App. 1988)(where a professional becomes aware of a third party's intention to engage in violence against a specific person). Here, Wal-Mart did not have this type of special relationship with Young. Wal-Mart was not aware of Young's identify and certainly did not have information that anyone intended to harm or engage in violence against him.

On occasion, courts also examine whether "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct."

5

*Carneyhan,* 169 S.W.3d at 840 (citing Restatement (Second) of Torts § 315 (1965)). Some of the special relationships giving rise to the duty to control could include parent/child, employer/employee, "owner of land or chattel and the person using such," and "one who takes charge of a person with dangerous propensities and the person under control." *Id.* Wal-Mart had no authority or right to control the actions of the law enforcement officers; Wal-Mart did not employ them; and Wal-Mart could not direct their decisions and activities.

The Court does not agree that because Wal-Mart has been previously involved in litigation regarding its loss prevention measures, it should have foreseen that Young could be shot under these circumstances. This argument would unreasonably expand the foreseeability analysis. It also overlooks the special relationship test. Under Kentucky law, the special relationship test functions as a proxy or shortcut for the foreseeability analysis by declaring that the intentional act (and its consequences) of a third party may be "foreseeable" to those in a special relationship. Thus, an abstract analysis of what is and what is not "foreseeable" is unnecessary absent a determination that the requisite special relationship exists. As Judge Boggs notes, "[a]t bottom, Kentucky courts have conceded, deciding the existence of a duty of care is 'essentially a policy determination,'" and "'a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *James,* 300 F.3d at 691 (citing *Mullins,* 839 S.W.3d at 248 and *Sheehan v. United Servs. Auto Ass'n*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996)).

As described above, the inquiry is not whether Wal-Mart knew or should have known that negative consequences could occur if it incorrectly or incompletely reported a specialty license plate to law enforcement officers. Rather, the question, under Kentucky law, is whether

6

Wal-Mart owed a duty to protect a person who was not readily identifiable from the intentional acts of third persons. *See, e.g. Comm'r. Corr. Cabinet v. Vester*, 956 S.W.2d 204 (Ky. 1997)(holding that even though state officials had a general duty to prevent inmates from escaping, they did not owe a legal duty to third parties to protect them from harm caused by escapees, since this harm was unforeseeable as a matter of law). Here, it was law enforcement officers, and not Wal-Mart employees who inflicted Young's injuries. For the Court to assume for the sake of this motion that Wal-Mart failed somehow to exercise ordinary care in reporting the background description on the suspects' speciality license plate would be a great leap of logic itself. Moreover, that a foreseeable result of subsequent events would be the shooting of a person who had no connection whatsoever to the reported shoplifting, is an even greater leap of foreseeability.

Because the Court concludes that the scope of Wal-Mart's duty did not extend to Young, it is unnecessary to address whether the law enforcement actions should properly be characterized as an intervening or superseding cause.

IV.

Young also claims that Wal-Mart is vicariously liable for his injuries. Under Kentucky, "the doctrine of respondeat superior, also called vicarious liability, provides the legal rationale for holding a master responsible for a tort committed by its servant." *Patterson v. Blair*, 172 S.W.3d 361, 363 (Ky. 2005). The doctrine operates when the parties were in a special relationship, including agency, joint enterprise, or, in more limited circumstances a principal-independent contractor relationship. *See, e.g., Roethke v. Sanger*, 68 S.W.3d 352 (Ky. 2001).

Young argues that discovery *might* reveal a special relationship between Wal-Mart and

7

the local government that could support vicarious liability on a theory of agency, joint adventure, or delegation of inherently hazardous activity. Young also argues that further discovery *might* reveal that loss prevention is an inherently dangerous activity, which could render Wal-Mart liable for its co-defendants actions in the event that they were independent contractors of Wal-Mart.

First, only certain relationships qualify as agency relationships under Kentucky law. These include employer/employee, principal/agent, and partnership. *Roethke*, 68 S.W.3d at 361. Wal-Mart does not employee the co-defendant law enforcement officers. Moreover, as noted above, it did not have the right to control the law enforcement officers' actions or investigation. *See Shedd Brown Mfg. Co. v. Tichenor*, 257 S.W.2d 894, 895-96 (Ky. 1953). The Court is satisfied that Young could produce no set of facts sufficient to infer an agency relationship between Wal-Mart, a private retailer, and the governmental law enforcement officers involved in responding to a shoplifting report.

For similar reasons, Young's argument that the law enforcement defendants could be Wal-Mart's independent contractors also fails. An independent contractor "undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in all its details." *City of Winchester v. King*, 266 S.W.2d 343 (Ky. 1954). Wal-Mart's report of a crime to local law enforcement officers simply does create any delegation of loss control activities or indicate an express or implied contractual relationship. The law enforcement defendants were working "for" Wal-Mart only to the extent that law enforcement defendants are always working to protect the interests of community members, including individuals and businesses. A conclusion that law enforcement officers are independent

contractors to those individuals and businesses who report crime would be a remarkable expansion of the usual conception of the principal-independent contractor relationship.

Finally, no facts could prove the existence of a joint enterprise, which is the third relationship that could give rise to Wal-Mart's vicarious liability. A joint enterprise consists of: "(1) an agreement, express, or implied, among members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Huff v. Rosenberg*, 496 S.W.2d 352, 355 (Ky. 1973). Young argues that Wal-Mart and the law enforcement officers shared a common purpose in investigating and deterring shoplifting, and that they shared a common pecuniary interest in limiting losses created by theft and by maximizing the tax revenues generated by Wal-Mart in the community. Although imaginative, these arguments do not support the conclusion that a private retailer is engaged in a joint enterprise with a public law enforcement agency and its officers under Kentucky law.[5]

V.

Finally, the Court will address the timing of this motion in light of Young's Rule 56(f) affidavit and his contention that Wal-Mart had not cooperated in his discovery requests. Subsequent to the filing of Wal-Mart's motion for summary judgment and Young's response, this Court entered a protective order for discovery on August 29, 2007. The discovery deadline for this case was October 31, 2007, and the deadline for dispositive motions is set for November 30, 2007. Since the entry of the protective order, and more tellingly since the close of discovery,

---

[5] Because the Court finds no basis to support a relationship giving rise to Wal-Mart's vicarious liability, it is unnecessary address Young's argument that loss prevention is an inherently dangerous activity.

the Court has received no objection from Young indicating that Wal-Mart has not now fully complied in discovery. The Court will therefore assume that Young has received adequate opportunity to discover any information he claimed to lack when he filed his response to the instant motion, and moreover that adequate time has passed for him to supplement his response to the summary judgment motion.

Specifically, Young's 56(f) affidavit sought to depose various governmental officials which could reveal "the relationship between Wal-Mart and local government which caused the atypical response to the shoplifting complaint in question." Young also sought various internal Wal-Mart documents relating to its loss control policies and training. The Court certainly recognizes, "the general rule is that summary judgement is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance, by and Through Hammons v. U.S.*, 90 F.3d 1145 (6th Cir. 1996). However, where, as here the deadline for discovery has passed, the Court is satisfied that there is no viable theory under Kentucky law which would render Wal-Mart either directly or vicariously liable for the actions of public law enforcement officers.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Wal-Mart's motion for summary judgment is SUSTAINED and Plaintiff's complaint against Wal-Mart Stores East, L.P. is DISMISSED WITH PREJUDICE.

This is not a final order as the City of Radcliff, Kentucky and several individuals remain as Defendants.

cc:     Counsel of Record